BREAUX, O. J.
The questions involved for decision are mostly of fact. There are scarcely any questions of law.
We have again before us the question growing out of an acknowledgment which the late Mrs. Ooralie Darby signed in the year 1878, payable at her death, which was stolen from the holder, Leon Sere, together with other papers, and which was renewed by Mrs. Darby in the year 1880, in compliance with the holder’s request.
It was retained by her a number of years after it had been thus renewed, and was delivered some time after the creditor’s death to widow Leon Sere, who was the daughter of Mrs. Darby. The holder, Sere, did not even know that the 'acknowledgment had been renewed. It does not appear that anything was said to him about the renewing.
At the date that the renewal was signed in 1880, Mrs. Darby was old and ill, and confined to her bed.
Some time after Sere’s death, one of the defendants, who was the agent of Mrs. Darby from the year 1877 to the date of her death in 1905, and quite familiar with her business, knew all about it, informed Mrs. Sere, his sister (who departed this life not very long afterward), of this note. When thus informed, her answer was that she did not know that there was a note between “mother and Leon,” her late husband. (Words quoted were words of Mrs. Leon Sere, daughter of Mrs. Coralie Darby, and wife of the late Leon Sere.)
A short time after this information had been given to Mrs. Sere, another of the sisters (who was with her, and who is also a defendant in the present suit) wrote to this agent, the said Octave Darby, her brother, who was at his home in Iberia, and the home of his mother, to forward the written acknowledgment to Mrs. Sere, as she wished to gather the assets of the succession of her late husband that was then in the process of settlement.
There'was an acknowledgment of the note made in the year 1886 by Mrs. Darby, who had, as we have before stated, the bote in her possession.
This acknowledgment was made without the least request from the creditor Sere, who was living at the time. It was indorsed on the written renewal of the note, and again Mrs. Darby acknowledged her indebtedness.
In the year 1892, some months after the death of her daughter, Mrs. Darby wrote a denial of liability, which she caused to be recorded in the clerk’s office, and stated that the consideration was not as expressed; that the consideration had entirely failed. In other words, she changed her mind.
This denial is„ not accurate. In it she states that the instrument in writing which she gave in 1878 was renewed by her after the death of Sere on the request of his wife, Mrs. Con stance Sere, on the same conditions that she had stipulated with Leon Sere.
It is substantially conceded that Mrs. Sere knew nothing about these conditions, and that Mrs. Darby was in error in thus stating. The extent of the error necessarily weakens the effect of the denial.
It must be borne in mind that the only attack on the ground of want of consideration on this note is made by the said agent and his mother only after the death of both Sere and his wife, and many years after the note had been executed, under circumstances which absolutely weaken and break down the testimony..
Another incident is pertinent. The agent *855 to whom we have referred above informed Miss Garidel, of this ejty, that the amount was due to the late Leon Sere.
She is very clear and direct in her statement — quite positive. She relates the facts circumstantially.
On the other hand, on the part of the defendants the agent, Octave Darby, states as a witness the facts connected with the signing of the first paper in 1878. He relates at some length that the late Leon Sere was at the home of the late Mrs. Darby; she was ill at the time, had been confined to her bed for a number of weeks; that Sere came to the door of the room, and stated to him that his mother did not owe him anything, but inasmuch as he would have to take care of and provide for the two daughters of Mrs. Darby at his home, in the event of her death (for they could not remain with their brothers in the country); for that reason the mother should sign the document in question; that she signed it, on the explanation of the agent. At first she refused to sign.
We pass from this document signed some time in the year 1878 to the document which the agent prepared about' two years after, and handed to his mother to be signed, and which she did sign.
One of the strange features of this ease is that this document remained in the possession of the debtor; never was delivered to the creditor in favor of whom it was made. The said agent signed as a witness this note given in renewal of the old note. He testified that when the first note was given he mentioned to his brother-in-law, Sere, that he had not stated the consideration in the document. He (Octave) seems to have known that it was advisable to state the consideration, as it was exceptional, and it referred to the support of his sisters, yet in writing the new note in renewal of the old he (Octave) not only failed to insert the consideration which he thought should have been inserted in the old note, but he mentioned that it was for advances which had been made.
We have already stated that it was kept alive by the agent, Octave, and his mother. It was delivered to be inventoried among the assets of the late Leon Sere at the instance of Mrs. Leon Sere. No one objected to the use of the note on the ground that it was without consideration. On the contrary, it was handed over as a valid and binding obligation.
The facts render it in place to state here that at the date the acknowledgment was signed, and at no time thereafter, the young ladies, in whose behalf it is said the obligation was signed, were ever told a word about it. It does not appear that they were consulted about their future home in the event of the mother’s death.
One of these ladies, the younger, died many years before the death of her mother. But of this later.
In the settlement of the succession of Sere, the instrument of writing was noted as if it was considered that it had some value. At other times it was treated as if it had no value. In the final settlement of the succession it passed to the mother by regular sale and adjudication as of no value. The reason of this, one of the plaintiffs testified, was that they did not know that it had any value, by reason of the fact that their grandmother was still living, and for that reason they did not choose to treat it as of any value. That the circumstances and the uncertainty of maturity all made against the note or instrument of writing.
When the case was before us in the previous appeal, in view of its remarkable features, we concluded that we would remand it. Sere v. Darby, 118 La. 619, 43 South. 255.
After it had been remanded, new evidence was admitted. It .has thrown no light upon the issues. On the contrary, it rather tends to cloud than to clear facts and issues.
*857 We will state that the additional testimony-shows that the late Leon Sere was an excel-lant bookkeeper and accountant, and that his character was of the highest. Not the least breath of suspicion is cast upon his memory by the testimony.
There is another feature that arrests attention. The case having been remanded, it must have been evident to defendants that the court desired all the light possible in order to do justice among the parties. Strange to say, one of the defendants, Miss Coralie Darby, upon whom a subpoena had been served, and who had something to do with the renewal of the instrument of writing in question, intentionally left, and did not return until after the trial.
We cannot imagine why it was that this defendant did not choose to answer such questions as might have been propounded in regard to the acknowledgment. It would then have been explained why it was that a letter was written by her asking that the paper be forwarded as before mentioned in order to be inventoried among the assets of the succession of Leon Sere.
• Another exceptional fact is that another of the defendants, Paul Darby, filed an answer after the case had been remanded in which he disclaimed ever having made the least v defense to plaintiffs’ demand.
The case stands thus: It was remanded on objection urged for further evidence.
On its return here it is not explained why the principal and agent delivered the document to Mrs. Constance Sere.
One of the defendants goes away so as not to testify, the other files an appearance asking that the suit be dismissed as to him, as he makes no defense.
The testimony of Miss Garidel is met with a denial, without attempt at explanation.
The opinion heretofore handed down by us as relates to services, discussing them from the point of view presented by defendants, stated that Sere had rendered no service; referring to the maintenance and support of the two daughters. It was not the opinion of the court (nor do we think that the words used lead to that inference), to hold that there was no other consideration.
In justice to learned counsel for defendants, we will state that it is not so contended. They have shown every disposition to be fair.
We deem it proper to make this statement in passing.
We said in the cited case, which is controlling:
“They may also prove error. This is the extent of our decision. We decline to go further, and pass upon other issues in the present situation of the case. Each of the parties, the plaintiffs on the one hand, and the defendants on the other, should have the opportunity of meeting the issues as relates to facts from the standpoint of this decision.”
It is almost useless to state that the decision did not hold that the instrument had consideration or did not have consideration. That was left to future decision, after the admission of other testimony.
The following is the story of the considera-. tion of the instrument sued upon:
On the second trial in the district court, after the case had been remanded, it was proven that the late S. M. Darby, the husband of the grandmother of plaintiffs (the late Mrs. Carolie Darby), had been unfortunate; he had failed in business. Struggling against misfortunes, he sought to improve his place, which was in a dilapidated condition after the Civil War. Money was needed to make these improvements.
It is not extreme to suppose that he received something from his son-in-law, who was earning a fairly large salary. It was shown that there were business relations between the two.
At the beginning of the statement of our conclusions, we feel entirely safe in saying *859 that this case, because of its facts, is remarkable. We have given it our most earnest thought, and have arrived at our conclusion with some degree of hesitation in view of the contradictory circumstances which it presents.
There are features of this case that are irreconcilable with the idea that the only consideration was the care for and support of the two daughters of Mrs. Darby — that is, Coralie and Louisa Darby. One of these remarkable features is that the note was renewed by Mrs. Darby after the death of her daughter Louisa, and although the care and support referred to was reduced by one-half at least, yet not the least change was made in the amount; it still remained as originally stated.
Another remarkable feature is that the brother, who certainly was a faithful agent of his mother (one of the defendants), although the sister had departed this life as before stated, and there was only one remaining of the two sisters — Octavia and Louisa — and although he says he was of the 'impression that there was no consideration, yet he mentioned to his sister Mrs. Leon Sere that there was such a note, turned it over to her to be inventoried with the succession as before mentioned.
Moreover, a short time before, he stated to a young lady whose name we have mentioned above, who was an intimate friend of his and of the family, that the amount claimed was due.
This young lady is a third person, not in the least interested in the litigation. Why should she volunteer such a statement if it had not been made?
Conceding for the discussion that the burden of proof was with the plaintiffs, such a statement of indebtedness by the only witness who testified in regard to consideration of the document is an acknowledgment of such a character that the burden of proof as a rule of evidence passes out of consideration as relates to plaintiff.
But it is stated that the document was left with the debtor, and that from this alone it may fairly be inferred that she was not indebted.
That presents a serious phase, and is almost unanswerable until it is recalled that the principal defendant in the suit (Octave) was the active agent by whom the document was delivered as representing an obligation of his mother.
In our decision heretofore handed down we likened an heir contesting an account of the de cujus (in so far as relates to the legitime) to a creditor, a proposition that we reiterate.
From that point of view an instrument can, in certain contingency, be contradicted, and the simulation alleged proven. But where the only witness who seeks to contradict the instrument has given it his approval, and has so clearly expressed himself in regard to the indebtedness, it becomes difficult to decide that he has successfully shown simulation of the instrument he attacks.
We are not inclined to a theory that would cast the least suspicion on any one. On the contrary, we draw our inference from facts not at cross purposes with the idea of fair dealing and good faith. From that point of view the case will stand thus:
The late S. M. Darby, grandfather of plaintiffs, father of defendants, had fallen into adverse days. It is reasonable to infer from the testimony that his son-in-law chose to afford him some assistance during the time that he was administering the paraphernal property of his wife, Mrs. Darby. The money may" have been handed over without much thought of keeping account. It sometimes happens that in dealing with the unfortunate not much care is given to account keeping. In time the father-in-law departed this life, and it may be that he was indebted to the late Leon Sere. There is testimony to sustain that theory. *861 It may also be that advances were made to tbe motber-in-law as well by. tbe late Leon Sere, although testimony is silent upon tbe subject as to her. When Sere mentioned tbe subject of a document showing indebtedness, Mrs. Darby may have felt conscious that something was due. It may be not the whole amount was due by her or her late husband. In the interview, when Octave Darby, his mother, and Leon Sere were present, the daughters were mentioned. The sick, old, feeble, and solicitous mother signed the paper. How much there is of real consideration, and how much was owing to the solicitude of the mother for her daughters, it is impossible to tell.
The agent in time became convinced that there was really nothing of indebtedness or of advances; that it all related to the future support of the daughters.
Mrs. Darby recalled only that part of the consideration related to her daughters. After the death of her daughter Mrs. Constance Sere she (Mrs. Coralie Darby) wrote out a denial, which we have already had occasion to say was not accurate.
The debt may have been exclusively a debt of the husband (the late S. M. Darby), which she possibly preferred not to deny as long as it remained in her mind that her son-in-law had been thus kind to her husband.
The said written denial with the evidence before us cannot be controlling. It may be that in the Sere family the document, the one sued upon, was not considered as strictly representing a business transaction. It, none the less, was kept by them, and when the opportunity arose it was presented for payment.
We have pondered over the facts, and have given them our most careful attention. It may be possible, for all we know, to arrive at another conclusion. We have attempted it, but return to the thought that, all things considered, we cannot deprive the holders of the document of the amount it represents, by holding that it is a simulation. In view of the honorable names of the family, the thought of simulation and fraud does not easily arise.
We have already stated that one of the defendants, Paul Darby, has filed an answer averring that the suit should not have been filed against him, and praying that such judgment be rendered as will conform to law and equity, and that he be not condemned for the costs.
As relates to this demand (of Paul Darby);
All the defendants appear and pleaded prescription on the 22d day of January, 1906. Paul Darby on the 23d of April, 1907, in his answer says that he has recognized the indebtedness of his mother to the plaintiffs, and that he has never contested the claim. He asks not to be condemned for the costs.
As to him there remains only the question of costs, which we will decide by holding that he is bound for the costs in the district court.
Dor reasons stated, it is ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, affirmed. The defendants, George, Paul, Octave, Ooralie, Delicie, and Gabriel, will have to pay all the costs of the district court.
The costs of the first appeal are disposed of as to who shall pay them in the decree of the court, heretofore handed down.
The costs of this appeal are to be paid by George, Octave, Coralie, Delicie, and Gabriel Darby.